Peter C. Bronson, Cal. Bar No. 60669
LAW OFFICES OF PETER C. BRONSON
A Professional Corporation
770 L Street, Suite 950
Sacramento, California 95814
Telephone: (916) 444-1110
Facsimile: (916) 361-6046

Attorneys For Creditor Conntechnical Industries

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>**CT DRIVES, LLC,**<br><br>            Debtor. | Case No. 11-60198 SLJ 11<br><br>Chapter 11<br><br>**CREDITOR CONNTECHNICAL INDUSTRIES' OBJECTION TO DEBTOR'S PROPOSED DISCLOSURE STATEMENT**<br><br>Date:   March 1, 2012<br>Time:  1:30 p.m.<br>Place:  United States Bankruptcy Court<br>          280 S. First St., Room 3099<br>          San Jose, California 95113<br>Judge: Hon. Stephen L. Johnson |

      Creditor Conntechnical Industries ("Conntechnical") hereby objects to the Proposed Disclosure Statement of debtor CT Drives, LLC ("Debtor"), on the ground that the Disclosure Statement does not contain adequate information to allow creditors to make an informed decision regarding Debtor's Proposed Plan of Reorganization (the "Proposed Plan") filed February 1, 2012.

# TABLE OF CONTENTS

| | Page |
|---|---|
| TABLE OF AUTHORITIES…………………………………………………………….. | ii |
| I. PRELIMINARY STATEMENT……………………………………….............. | 1 |
| II. FACTUAL BACKGROUND…………..………………………………………… | 2 |
| III. LEGAL ANALYSIS……………………………………………………………….. | 7 |
|     A. A Disclosure Statement Must Provide Sufficient Information To Enable Creditors To Make an Informed Decision Whether To Accept the Proposed Plan …………..……………………………………………………. | 7 |
|     B. Inadequate Information Is Provided Concerning the Plan……………….. | 8 |
|     C. There Is No Legitimate Basis for Placing Conntechnical and the Other Unsecured Creditors in Separate Classes……………...….…………… | 10 |
|     D. Adequate Time Should Be Allowed for Discovery Prior to Approval of a Disclosure Statement or Scheduling of Confirmation Proceedings ………. | 10 |
| IV. CONCLUSION……………………………………..................................................... | 11 |

# TABLE OF AUTHORITIES

**Cases**                                                                                                             **Page**

*Duff v. United States Trustee (In re California Fidelity, Inc.),* 198 B.R. 567 (9th Cir. B.A.P. 1996)……………………………………………………………………………………. 7

*In re 266 Washington Assocs.,* 141 B.R. 275 (Bankr. E.D.N.Y.), *aff'd*, 147 B.R. 827 (E.D.N.Y. 1992)…………………………………………………………………………….. 10

*In re Metrocraft Publishing Svcs. Inc.*, 39 B.R. 567 (Bankr. N.D Ga. 1984)……………….. 8

*In re Neutgens*, 87 B.R. 128 (Bankr. D. Mont. 1987)……………………………………. 8

*In re Pacific Shores Development, Inc.,* 2011 WL 778205 (Bankr. S.D. Cal. 2011)……….. 8

*In re Scioto Valley Mortgage Co.*, 88 B.R. 168 (Bankr. S.D. Ohio 1988)…………………... 8

*In re Tucson Self-Storage, Inc.*, 166 B.R. 892 (9th Cir. B.A.P. 1994)………………………. 10

**Bankruptcy Code**

Section 101(9)(A)……………………………………………………………………………. 2

Section 1125………..………………………………………………………………………….. 7

Section 1129…………………………………………………………………………………. 10

**Federal Rules of Bankruptcy Procedure**

Rule 2004……………………………………………………………………………………….. 1,10

# I. PRELIMINARY STATEMENT

Conntechnical is by far the largest creditor in this case, and therefore would incur great risk if a plan of reorganization were confirmed on the basis of an inadequate disclosure statement. Debtor's Proposed Disclosure Statement is defective by any measure, and the Proposed Plan appears to be offered in bad faith.

In essence, Debtor proposes to reduce Conntechnical's unsecured claim of about $600,000 to zero by objecting to it; to pay the other unsecured creditors in this case a grand total of about $1,600; and to offer purported secured creditors a *minority* interest in the company, with manager Wayne Higashi ("Higashi"), his family and other insiders getting the *majority* interest. In addition, the secured creditors' proposed minority interest is subject to future dilution for the benefit of the Higashi group.

Moreover, the Proposed Disclosure Statement lacks virtually all legal prerequisites. It fails to offer any basis for concluding that the company can survive, much less make a profit; it contains no real liquidation analysis; it is premised on supposed factual information that is misleading and inaccurate; it fails to account for assets of the Debtor, or their value; and in short, it is a vehicle for Higashi to retain the company (and its many related entities) while shedding its debts for $1,600.

Higashi apparently hopes to accomplish a "cramdown" by isolating the unsecured claims of Conntechnical and related entities in their own purported class, and the other unsecured creditors (largely insiders, with debts totaling less than $21,000) in a separate class that, presumably, would be offered up as a consenting (albeit miniscule) impaired class for purposes of voting on the plan. This arbitrary division of classes is improper and renders the plan unconfirmable, which is an independent reason for rejection of the Proposed Disclosure Statement.

Finally, there is reason to believe that Higashi has commingled assets of his many business entities, freely transferring assets and operating his empire for his own personal gain. Conntechnical has filed a motion for an order permitting the examination of Higashi under Rule 2004 of the Federal Rules of Bankruptcy Procedure; and prior to the hearing on the Proposed Disclosure Statement, Conntechnical will have filed motions for additional Rule 2004 examinations. While Conntechnical submits that the Proposed Disclosure Statement must be disapproved in its present form, at the very

least any hearing on approval should be postponed until these witnesses have testified.

## II. FACTUAL BACKGROUND

At all times, Higashi has controlled Debtor's operations. However, neither the Disclosure Statement nor Debtor's Statement of Financial Affairs identifies its members, or their percentage interests.[1]

Conntechnical is Debtor's largest creditor, with a claim of almost $600,000 arising principally from an unpaid promissory note. Conntechnical also holds approximately a 7 percent membership interest in Debtor. Conntechnical, a California corporation, is a sales representation company for automotive components. Its President is Connard Cali ("Cali"), who is also the President of Positork Distributing, Inc. ("Positork"), which designs and manufactures torque transfer devices for automotive applications.

Debtor's Proposed Disclosure Statement states that Cali, Conntechnical and Positork have misappropriated technology and trade secrets of Debtor, and have entered into a working relationship with Automotive Import Manufacturing ("AIM")., with which Debtor had a working relationship. However, Cali, Conntechnical and Positork adamantly dispute Debtor's assertions. Cali and AIM had an established working relationship since 1979. Cali and AIM worked closely together on active pulleys for at least three years prior to the formation of Debtor.

Conntechnical contends that Debtor, faced with no cash and on credit hold with its supply base, pleaded with AIM to assume the responsibilities of sourcing and production. As to the technology, Conntechnical contends that it can document that it, not Debtor, conceived the technology in question; and that as to trade secrets, Cali solely brought to Debtor an extensive, pre-established supply and customer base. Conntechnical further submits that Debtor also attempted to deliberately appropriate exclusive rights to the polymer supplier identified and developed by Cali, as well as the goodwill of Cali-owned brands. Indeed, as noted in the Proposed Disclosure Statement, Positork has filed a federal District Court action against Debtor for, among other things, trademark

---

[1] Sections 21 and 22 in Debtor's Statement of Financial Affairs are left blank, possibly on the ground that Debtor is an LLC, not a corporation. However, the Bankruptcy Code is clear that an LLC must be treated as a corporation for all purposes. 11 U.S.C. § 101(9)(A). Identities of members and former members should have been disclosed, in both the Statement of Financial Affairs and the Proposed Disclosure Statement.

infringement, trademark counterfeiting, copyright infringement, unfair competition and false advertising.[2] Debtor filed its Chapter 11 petition on the eve of its deadline for responding to the Positork Complaint.

In order to give creditors the information they need, Debtor must disclose that Positork, Conntechnical and Cali contest Debtor's allegations, as well as the grounds upon which Debtor's allegations are contested. Debtor also must, but has failed to, explain what the consequences would be for Debtor's business and for the Proposed Plan in the event Positork prevailed on its claims against Debtor.

Debtor is one of a multitude of business entities, mostly recently formed and all owned and/or controlled by Higashi – and freely engaging in transactions with each other. These entities include, without limitation:

- Innovative Technologies Licensing and Management Corporation ("ITLMC"), a California corporation, dba Epilogics. Debtor's Schedules list ITLMC, believed to be wholly owned by Higashi, as its largest secured creditor, ostensibly as a result of "management services" rendered to Debtor – another Higashi company. Conntechnical is informed that Higashi uses ITLMC as a vehicle for payment, in effect to himself, of personal expenses and management fees by his various entities. Conntechnical is further informed that between May 2008 and July 2010, Debtor paid management and fees in excess of $414,647 to ITLMC, at a time when Debtor was struggling and Conntechnical was repeatedly being asked to advance funds. None of these payments have been disclosed.

- EPX, Inc., now dissolved. It is believed that members of EPX received interests in Debtor and/or other Higashi companies. Debtor's schedules do not mention all the patents and intellectual property assigned by EPX to CT Drives; instead, Debtor's Amended Schedule B refers generally to intellectual property, ignoring the admonition on Official Form 6B to "give particulars". Likewise, Debtor fails to explain how it arrived

---

[2] *Positork Distributing, Inc., etc. v. CT Drives, LLC, etc.,* Civil Action No. 11-CV_01346-SBA, U.S. District Court for the Northern District of California.

at what appear to be arbitrary, and unrealistically low, valuations for its intellectual property interests.

- The Higashi Family Trust. This Trust is listed as a secured creditor.
- Kühl Wheels, LLC ("Kühl"). On the eve of entry of a half-million-dollar judgment against Kühl, Higashi attempted to backdate a purported transfer by Kühl of valuable intellectual property to Debtor; and then apparently purported to have Kühl transfer the intellectual property to Higashi's ITLMC, for unknown consideration. Debtor's schedules do not mention either the ownership or any transfer of the Kühl intellectual property.
- HD Drives, LLC ("HD"). Higashi formed HD to commercialize technologies for automotive components. However, although Higashi apparently secured funding for HD, he has failed and refused to provide any financial information for HD, apparently never opened a bank account for it, and abruptly resigned as its manager in late 2010.
- ES Design, LLC. ("ES"). This corporation was formed in 2009 to develop and fabricate parts for use by Debtor, and Debtor apparently holds approximately a 44 percent interest in ES. However, no such interest is disclosed in either Debtor's schedules or the Proposed Disclosure Statement. Conntechnical is informed that Debtor has paid expenses of ES. Higashi has failed to respond to requests for financial information, except to state – apparently falsely – that he dissolved ES in August 2011. (According to the California Secretary of State, ES currently remains an active LLC in good standing.)
- Conntechnical is informed that there have been other assignments of intellectual property among the Higashi entities, and loans to Higashi, without discernible evidence of consideration or remuneration. In addition, it appears that the Higashi entities all have shared the same bookkeepers, CPA firm, and legal counsel.

The Proposed Disclosure Statement states that Debtor's secured creditors consist of holders of Secured Convertible Notes secured by the company's assets. These secured creditors are to receive no cash payments under the Proposed Plan, but instead "a proportionate equity unit ownership in the new company". However:

- The "new company" is not defined. Apparently it is the same as the "reorganized company" (Disclos. Stmt. at 7), but that is not clear.
- Debtor fails to disclose that *three days* before granting a security interest to the note holders, Higashi caused CT to grant a blanket security interest to Thomas L. Bahrick ("Bahrick") – the attorney for the Higashi entities – and Rose A. Higashi, who is Higashi's wife (Cal. Sec. of State UCC Filing No. 1107273629200). The Proposed Plan and Disclosure Statement are silent concerning what appears to be an "insider" security interest, with a priority senior to that of all the note holders.
- Higashi indicated in May 2011 that Debtor has four patents, or pending patents. But neither these patents, their disposition, nor their value are mentioned.
- As for the note holders, perusal of Debtor's Schedule D reveals that of the 51 purportedly secured note creditors, 56 percent ($86,936.46) of the alleged total secured debt ($155,553.79) is held by insiders or other Higashi associates, namely: Higashi, Bahrick, Steven Higashi, Douglas and Tomoko Higashi, the Higashi Family Trust, and Perisho (Higashi's accounting firm). Thus, Debtor fails to disclose that the note holders will have, at best, a minority interest.
- The Disclosure Statement does not explain what a "proportionate equity unit ownership" means. But even if the non-insider note holders were collectively to receive a *pro rata* 44 percent interest in the undefined "new company", even that interest is subject to being further diluted: As soon as the "reorganized company begins to receive license fees," Higashi and his cohorts are to "receive equity participation in the reorganized company". What type or amount of equity interest they will receive is left to speculation.
- Conntechnical holds a small equity interest in the Debtor. The Disclosure Statement fails to explain why some equity holders will continue to have an interest in the "new" or "reorganized" company (both terms are used), and others will not.

There are other questions raised, but unanswered, by the Proposed Disclosure Statement:

- Debtor's Statement of Financial Affairs, at paragraph 23, states that money has been withdrawn by or distributed to insiders during the one year prior to the commencement of

the case; and in the space for identification of these disbursements, Debtor has stated "see attached". However, nothing is attached.

- Debtor's Statement of Financial Affairs, at paragraph 3(b), states that there have been potentially preferential transfers, and refers to an attached list; but nothing is attached. In fact, the Proposed Disclosure Statement is silent concerning avoidable transfers.

- The Disclosure Statement improperly[3] "gerrymanders" the general unsecured creditors into two classes: Conntechnical and its affiliates in one class (Class 3b), and the other unsecured creditors in a different class (Class 3a). Debtor proposes to pay nothing to the Conntechnical group (Class 3b) based on anticipated objections to Conntechnical's claim, but is silent concerning what will happen if Conntechnical's claim is allowed in whole or in part. As for Class 3a, Debtor estimates that those claims will total about $20,504.81, of which a maximum of 8 percent will be paid – a total payment of no more than $1,640.38, in 24 payments of $68.35 each! Even those payments will not be made unless Debtor generates licensing fees. Furthermore, the bulk of the unsecured debts to be placed in Class 3a are allegedly owed to ITLMC (Higashi's personal company) and Bahrick (Debtor's attorney).

- The projections which Debtor attaches as an exhibit to the Proposed Disclosure Statement do not appear to support payment of $68.35 a month – and the Disclosure Statement does not explain how those projections were formulated.

- Debtor's Schedule E indicates the existence of "extensions of credit in an involuntary case" without explanation.

In short, the proposed Plan would keep the company under the control of existing management (although the Disclosure Statement makes that difficult to discover), and offers creditors $68.35 a month. Under such circumstances, creditors are particularly in need of a complete and reliable liquidation analysis; but that is also lacking.

/ / / / /

---

[3] See Part III(C), *infra*.

## III. LEGAL ANALYSIS

### A. A Disclosure Statement Must Provide Sufficient Information To Enable Creditors To Make an Informed Decision Whether To Accept the Proposed Plan.

The purpose of a disclosure statement is to give all creditors and interest holders a source of information which allows them to make an *informed* choice regarding their approval or rejection of a proposed plan. *Duff v. United States Trustee (In re California Fidelity, Inc.)*, 198 B.R. 567, 571 (9th Cir. B.A.P. 1996). Bankruptcy Code Section 1125 requires a plan proponent to provide impaired creditors and interest holders with a written disclosure statement which provides adequate information regarding the proposed plan. "Adequate information" means:

> "…information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan, but adequate information need not include such information about any other possible or proposed plan and in determining whether a disclosure statement provides adequate information, the court shall consider the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information…." [Bankr. Code § 1125(a)(1).]

The essential elements to be contained in a proper disclosure statement include, among others:

- the events which led to the filing of the bankruptcy petition;
- a description of the available assets and their value;
- the anticipated future of the company;
- present condition of the debtor;
- the source of information included in the disclosure statement;
- the accounting method utilized to produce financial information, and identification of the accountants who prepared the information;
- estimated administrative expenses, including attorneys' and accountants' fees;
- collectibility of accounts receivable;

- the estimated return to creditors under a Chapter 7 liquidation;
- information relevant to the risks posed to creditors;
- financial information, data, valuations or projections relevant to the creditors' decision to accept or reject the Chapter 11 plan;
- the likely recovery of preferential or other voidable transfers;
- litigation likely to arise in a nonbankruptcy context;
- tax attributes of the debtor;
- the relationship of the debtor with affiliates; and
- means of implementation of the plan.

*See In re Pacific Shores Development, Inc.,* 2011 WL 778205, slip opn. at 4 (Bankr. S.D. Cal. 2011); *In re Metrocraft Publishing Svcs. Inc.*, 39 B.R. 567, 568 (Bankr. N.D Ga. 1984); *In re Neutgens*, 87 B.R. 128, 129 (Bankr. D. Mont. 1987); *In re Scioto Valley Mortgage Co.*, 88 B.R. 168, 171-72 (Bankr. S.D. Ohio 1988).

A disclosure statement must set forth the *factual basis* for each opinion or prediction. *In re Neutgens, supra,* 87 B.R. at 129-30.

**B. Inadequate Information Is Provided Concerning the Plan.**

Debtor's Proposed Disclosure Statement lacks sufficient information to meet legal requirements. For example:

1. Transactions among the Higashi entities − including the alleged indebtedness to ITLMC, the existence of assigned EPX patents, disposition of the Kühl Wheels intellectual property and the status of ES Design − are not disclosed. In fact, the Disclosure Statement is silent concerning the Debtor's relationship with the multiple Higashi entities. These omissions are particularly worrisome in light of the fact that, as explained above, Debtor's Statement of Financial Affairs states that money has been paid out to insiders but does not give any information about such payments.

2. The Disclosure Statement values Conntechnical's claim of approximately $600,000 at zero. Since the Plan proposes to pay only about $68 per month to unsecured creditors, what would be the consequences of Conntechnical's claim being allowed, even in part?

3. There is no disclosure of anticipated post-petition administrative fees payable to attorneys, accountants or other professionals.

4. There is no financial analysis, either of the Debtor's condition or to support the projections attached to the Disclosure Statement. The projections do not appear to provide for payments to creditors; and in any event, Debtor fails to disclose the source of the figures, the method of preparation of the projections, or who prepared them.

5. Creditors are told that insiders – who will quickly become holders of equity interests of undisclosed magnitude – will contribute enough money to pay creditors. Since Debtor only proposes to pay about $1,600 to creditors, this offers little assurance or information to Conntechnical – the largest creditor – or to the non-insider noteholders who have no idea what the size or value of their proposed equity interests might be.

6. The discussion of "tax implications" at pages 9 and 10 of the Disclosure Statement is a hypertechnical, generalized explication of general tax law principles, having little or no specific applicability to this case.

7. Debtor's purported liquidation analysis is meaningless, because it essentially opines that in the event of liquidation, its personal property is only worth about $10,000, and its technology $100,000 or less – such that the net proceeds of liquidation of assets "would be substantially less than the amounts to be paid under this Plan". There is no explanation of how these valuations were calculated; and the information available to Conntechnical suggests that the intellectual property and technology are worth far more than $100,000. Moreover, Debtor's Proposed Plan projects a total of about $1,600 being paid to creditors; it is difficult to imagine a less favorable result in the event of a liquidation of assets worth even $110,000.

8. The Proposed Disclosure Statement fails to show why the Proposed Plan is feasible. Conntechnical is confident that its claim will be allowed in full; yet even the paltry (and contingent) $1,600 "pot" for unsecured creditors depends on that claim being rejected. Moreover, as indicated hereinabove, Positork has filed a lawsuit against Debtor for trademark and copyright infringement, among other claims; the Proposed Disclosure Statement does not discuss the potential implications of a judgment in Positork's favor.

9. Finally, Debtors' brief discussion of its future business plan fails to give creditors any details on the basis of which they could even begin to independently determine if the Proposed Plan is feasible *or* preferable to a liquidation.

## C. There Is No Legitimate Basis for Placing Conntechnical and the Other Unsecured Creditors in Separate Classes.

As indicated above, Debtor seeks to divide the class of general unsecured creditors – Class 3 – into two classes, designated as 3a and 3b, with Conntechnical's claim (along with Positork and Cali) isolated in Class 3b. The stated rationale for splitting Class 3 is that objection will be made to Conntechnical's claim; but Debtor reserves the right to object to claims in Class 3a as well, and in any event the payment terms proposed for allowed claims in both Class 3a and Class 3b are identical.

The splitting of Class 3 would arbitrarily create an impaired class (Class 3a), whose few members (themselves mostly insiders) have claims totaling only $20,504.81, that might accept Debtors' proposed Plan; and would isolate Conntechnical's claim of several hundred thousand dollars. Such treatment violates the prohibition against separate classification and treatment of "substantially similar" claims. *Matter of Greystone III Joint Venture,* 995 F.2d 1274, 1279-81 (5th Cir. 1991); *In re Tucson Self-Storage, Inc.*, 166 B.R. 892, 897 (9th Cir. B.A.P. 1994).

The obvious purpose of such separate classification is "gerrymandering an accepting impaired class in violation of § 1129(a)(10)." *In re Tucson Self-Storage, supra,* 166 B.R. at 897. This kind of unfair discrimination precludes plan confirmation. 11 U.S.C. § 1129(b). Where a plan is not confirmable, the proposed disclosure statement should be disapproved. *See, e.g., In re 266 Washington Assocs.,* 141 B.R. 275, 288 (Bankr. E.D.N.Y.), *aff'd*, 147 B.R. 827 (E.D.N.Y. 1992).

## D. Adequate Time Should Be Allowed for Discovery Prior to Approval of a Disclosure Statement or Scheduling of Confirmation Proceedings.

Conntechnical has filed an *ex parte* motion for an order permitting the examination of Higashi pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure, including the production of relevant documents. Prior to the March 1, 2012 hearing on the Proposed Disclosure Statement, motions will have been filed for additional Rule 2004 examinations.

Given the numerous questions raised concerning the insiders' ongoing relationship with the company, the lack of clarity with regard to inter-company transfers and other transactions, the lack of financial data, and the general inadequacy of the Proposed Disclosure Statement, Conntechnical submits that completion of these examinations is essential to creditors' understanding of the condition of the Debtor, the value of its assets, and the prospects for reorganization.

## IV. CONCLUSION

For all the reasons set forth hereinabove, Conntechnical respectfully requests that the proposed Disclosure Statement be disapproved; or that, alternatively, the hearing thereon be continued for 90 to 120 days in order to permit the completion of relevant discovery.

DATED: February 23, 2012

Respectfully submitted,

Peter C. Bronson
LAW OFFICES OF PETER C. BRONSON
A Professional Corporation

By: */s/ Peter C. Bronson*
     Peter C. Bronson
Attorneys for Creditor Conntechnical Industries