```
Peter C. Bronson, Cal. Bar No. 60669
LAW OFFICES OF PETER C. BRONSON
A Professional Corporation
770 L Street, Suite 950
Sacramento, California 95814
Telephone: (916) 444-1110
Facsimile: (916) 361-6046

Attorneys For Creditor Conntechnical Industries, Inc.
```

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>CT DRIVES, LLC,<br><br>           Debtor. | Case No. 11-60198 SLJ 11<br><br>Chapter 11<br><br>**CREDITOR CONNTECHNICAL INDUSTRIES, INC.'S OBJECTION TO CONFIRMATION OF DEBTOR'S PROPOSED THIRD AMENDED PLAN OF REORGANIZATION**<br><br>Date:    September 6, 2012<br>Time:   1:30 p.m.<br>Place:   United States Bankruptcy Court<br>          280 S. First St., Room 3099<br>          San Jose, California 95113<br>Judge:  Hon. Stephen L. Johnson |

     Creditor Conntechnical Industries, Inc. ("Conntechnical") hereby objects to confirmation of the proposed Third Amended Plan of Reorganization (the "Plan") of debtor CT Drives, LLC ("Debtor").

# TABLE OF CONTENTS

| | Page |
|---|---|
| TABLE OF AUTHORITIES……………………………………………………….. | ii |
| I. INTRODUCTION……………………………………………………............ | 1 |
| II. FACTUAL BACKGROUND………...………………………………………. | 2 |
| III. LEGAL ANALYSIS…………………………………………………………... | 3 |
|     A. The Plan Has Not Been Accepted by Creditors…........................................... | 4 |
|     B. The Plan Is Not Proposed In Good Faith [§ 1129(a)(3)]…………………….. | 5 |
|     C. Unsecured Creditors Will Not Receive Property Equivalent to What They Would Receive in the Event of a Liquidation [§ 1129(a)(7)(A)]……..……… | 8 |
|     D. All Impaired Classes Have Not Accepted the Plan [§ 1129(a)(8)]…..………. | 9 |
|     E. No Impaired Class Has Accepted the Plan; and an Artificial Accepting Class Cannot Be Created through Improper Segregation of Claims [§ 1129(a)(10)]…………………………………………………………….. | 9 |
|     F. It Is Likely that Confirmation Would Be Followed by Liquidation and/or Further Reorganization [§ 1129(a)(11)]……………………………… | 10 |
|     G. Even If the Requirements of Section 1129(a) Somehow Were Deemed To Have Been Met, the Plan Could Not Be Confirmed Under Section 1129(b)……………………………………………………………….. | 10 |
|         1. *The Plan Discriminates Unfairly [§ 1129(b)(1)]*………………………. | 10 |
|         2. *The Plan Is Not Fair and Reasonable [§ 1129(b)(1)]*…………………. | 11 |
| IV. CONCLUSION………………………………….................................................. | 12 |

# TABLE OF AUTHORITIES

**Cases**                                                                                                     **Page**

*In re Boston Post Road Ltd. Partnership,* 21 F.3d 477 (2d Cir. 1994)……………………         3

*In re Tucson Self-Storage, Inc.*, 166 B.R. 892 (9th Cir. B.A.P. 1994)……………………         9

*Matter of Greystone III Joint Venture,* 995 F.2d 1274 (5th Cir. 1991)……………………         9


**Bankruptcy Code**

Section 101(31)…………………………………………………………………………….         4

Section 1126………………………………………………………………………………..        12

Section 1126(a)……………………………………………………………………………         3

Section 1126(c)…………………………………………………………………………..     3,4,5,10

Section 1126(d)…………………………………………………………………………..         4

Section 1126(g)……………………………………………………………………………       3,5,10

Section 1129………………………………………………………………………………..        12

Section 1129(a)……………………………………………………………………………     3,4,5,6,10

Section 1129(a)(3)………………………………………………………………………….   1,5,6,8,10

Section 1129(a)(7)………………………………………………………………………….       1,8,10

Section 1129(a)(8)………………………………………………………………………….        1,3,9

Section 1129(a)(10)…………………………………………………………………………      1,5,9,10

Section 1129(a)(11)…………………………………………………………………………         1,10

Section 1129(b)……………………………………………………………………………         3,10

Section 1129(b)(1)…………………………………………………………………………   1,4,5,10,11

Section 1129(b)(2)…………………………………………………………………………    1,2,3,11

## I. INTRODUCTION

Debtor has no real business operations, and has lost money throughout its nine months in Chapter 11. As Conntechnical will explain, the Plan is a very thinly disguised attempt to maintain the status quo – by letting Debtor's insider equity holders keep their interests – while repaying nothing (or next to nothing) to Debtor's only sizable creditor, Conntechnical. The Plan wholly fails to meet the requirements of Bankruptcy Code Sections 1129(a)(3), 1129(a)(7)(A), 1129(a)(8), 1129(a)(10) and 1129(a)(11), and therefore cannot be confirmed. Further, even if those failures could somehow be ignored or excused (which they cannot), Debtor still cannot "cram down" the Plan, because Debtor cannot meet the requirements of Section 1129(b)(1) or (b)(2)(B): The proposed Plan is not fair and equitable [§ 1129(b)(1)]; it does not provide that unsecured creditors will receive anything close to the value of their claims [§ 1129(b)(2)(B)(i)]; and it impermissibly calls for existing equity holders (who, not surprisingly, claim to support the Plan) to retain their interests [Section 1129(b)(2)(B)(ii)].[1]

In addition, Debtor's transparent attempt to create a favorable impaired class (Class 3a) by segregating Conntechnical (and a related entity) from the other unsecured creditors is impermissible, particularly since (a) the Plan proposes to treat all unsecured creditors identically, and (b) the only two voting creditors in Class 3a are two of Debtors' lawyers, who are also equity holders and who may not even be unsecured creditors.

Finally, Debtor's most recent Operating Report (for July 2012) shows zero sales, zero expenses, zero bills paid and, in short, no business activity. The outdated and unsubstantiated projections attached to Debtor's Third Amended Disclosure Statement (the "Disclosure Statement") are proved false by actual operating reports. A so-called "reorganization" under which existing equity holders keep their equity (at that, diluted by shares issued to management post-confirmation) and the unsecured creditors receive virtually nothing is not a reorganization. It is a scheme to permit Debtor's massive transfers to insiders to go uninvestigated and unredressed, and to let the current owners keep their equity, while the ostensible lack of money in the company is used as an excuse to

---

[1] References herein to section numbers are to the United States Bankruptcy Code (U.S.C. Title 11).

escape paying anything to creditors.

As Conntechnical will explain in more detail below, each and all of these shortcomings prevents the Plan from being confirmed.

## II. FACTUAL BACKGROUND

Debtor's Plan provides, *inter alia*, as follows:

Class 1a consists of the allegedly secured creditors listed on Debtor's Schedule D; and Class 4 consists of the equity holders listed on Debtor's List of Equity Security Holders filed November 4, 2011. The Plan characterizes the Class 1a claimants as secured note holders, and provides for them to receive equity unit ownerships in the reorganized company proportionate to their current percentage of the secured debt outlined on Schedule D. However, both the Plan and Disclosure Statement fail to disclose that every single "creditor" listed on Schedule D *is also an existing equity holder as identified on the List of Equity Security Holders. I.e., every* Class 1a creditor is also a creditor in Class 4 (equity holders).

The Plan states that all Class 4 equity interests will be canceled, but this is illusory: All the Class 1a creditors, who comprise the majority of the Class 4 equity holders, will keep their equity. It appears that the purpose of this artifice is to permit the Class 1a creditors to retain their equity interests at the expense of the unsecured creditors to whom the Class 1a creditors otherwise would have to be constructively subordinated [§ 1129(b)(2)(B)(ii)].

Classes 3a and 3b *each* consist of general unsecured creditors. While Debtor attempts to justify having two classes of unsecured creditors on the ground that Class 3a consists of trade creditors and Class 3b consists of note and litigation creditors, both Class 3a and Class 3b are to receive *exactly the same treatment.* Debtor proposes to pay the creditors in both Class 3a and 3b a total of 8 percent of their allowed claims, over a 24-month period. Conntechnical, which is the sole creditor in Class 3b [together with its principal, Connard Cali ("Cali") and related entity Positork Distributing, Inc. ("Positork")], is owed at least $590,027.06. Class 3a consists of trade creditors – apparently only two in number – who are attorneys for Debtor and are alleged to be owed only
/ / / / /

$14,206.11.[2]  Thus, Conntechnical holds at least *98 percent* of the unsecured debt in this case. Conntechnical has been segregated in a separate unsecured creditor class (Class 3b) in order to contrive a small class (Class 3a) that would vote to accept the Plan.

Debtor's counsel filed its Ballot Summary and Tabulation on August 20, 2012.  The Class 1a and 1c (a single small administrative claimant) ballots were voted in favor of accepting the Plan. The two attorneys who comprise the Class 3a creditors (with claims aggregating $14,206.11) voted to accept the Plan; the Class 3b creditors (including Conntechnical's claim of at least $590,027.06) voted to reject the Plan.  About 92 percent of the Class 4 creditors (most of whom are also Class 1a creditors) voted to accept it.   As Conntechnical will explain, a sizable number of the Class 1a ballots were cast by apparent insiders holding one-half to two-thirds of the dollar amount of Class 1a claims; thus, Class 1a has not accepted the Plan pursuant to Section 1126(c).   The single administrative claimant comprising Class 1c is not entitled to vote. [§ 1126(a); see *In re Boston Post Road Ltd. Partnership*, 21 F.3d 477, 484 (2d Cir. 1994).]  Class 4 cannot be deemed to have accepted the Plan because its members are not receiving or retaining any property [§ 1126(g)]. Thus, no impaired class has accepted the Plan except the "gerrymandered" Class 3a.  Under such circumstances, there is no basis for confirming the Plan under either Section 1129(a) or 1129(b).

### III.  LEGAL ANALYSIS

The Court may confirm a plan only if all the requirements of Section 1129(a) are met.  An exception to this rule is found in Section 1129(b)(1), which states that if all of the requirements of Section 1129(a) are met except Section 1129(a)(8) (which provides that each class must either have accepted the plan or be unimpaired thereunder), the Court may confirm a plan if it "does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan."  Further, Section 1129(b)(2)(B)(ii) states that a plan is only "fair and equitable" to an unsecured creditor if *either* he receives or retains property equal to the allowed amount of his claim *or* no creditor junior to him receives anything under the plan.

---

[2] The likelihood that these two attorneys have been improperly used to artificially create a tiny impaired class is discussed in more detail in Part III(A), *infra*.

As Conntechnical will explain, the Plan in this case broadly fails to meet these requirements. First, numerous prerequisites to confirmation under Section 1129(a) are not met. Second, the Plan cannot be confirmed under Section 1129(b)(1) because it discriminates unfairly against unsecured creditors, and is not fair and equitable in that, among other things, it permits insiders to retain both transferred assets and equity interests while unsecured creditors receive virtually nothing.

**A. The Plan Has Not Been Accepted by Creditors.**

A class has accepted a plan if holders of at least two-thirds in dollar amount of the interests held by class members have voted in favor of it. [§ 1126(d).] Debtor has not obtained sufficient votes.

*First:* Class 1a has not accepted the Plan, because it appears that non-insider votes represent no more than half, and evidently only about one-third, of the dollar amounts claimed by class members – far short of the two-thirds required under Section 1126(c). Debtor has not made it possible to calculate the relevant numbers with complete precision, because ballots were cast by Joyce Higashi and Patrick Higashi, presumptive insiders who are *not* listed as creditors on Debtor's Schedule D. However, insider creditors who are listed on Schedule D and whose ballots were counted by Debtor include: Wayne Higashi [§ 101(31)(B); listed on Schedule D at $10,150.00], Steven Higashi [§ 101(31)(B)(vi), $3,686.50], Douglas and Tomoko Higashi [§ 101(31)(B)(vi), $10,150.00], the Higashi Family Trust [§ 101(31)(B)(vi), $15,300.00], Higashi's company ITLMC [§ 101(31)(E), $27,349.06] and Robert Marangell [§ 101(B)(iii), $10,150] – totaling $76,785.56 out of $155,553.79 in total Class 1a claims. Thus, non-insiders representing no more than 51 percent of the total dollar amount of Class 1a claims have voted for the Plan. Furthermore, the ballots signed by Joyce Higashi and Patrick Higashi almost certainly relate to claims of other Higashi family members. With these latter claims included in the tabulation, insider claims would total at least 56 percent of the dollar amount of Class 1a ballots cast, and non-insider claims no more than 44 percent.

Moreover, Debtor's Ballot Summary and Tabulation appears to represent that the total amount of Class 1a claims is $134,135.00, rather than the $155,553.79 total set forth in Debtor's Schedule D. Based on the $134,135.00 figure, non-insider votes represent only 35 to 43 percent of

the total claims.

A class has accepted a plan if it has been accepted by claimants who hold at least two-thirds of the dollar amount of the class's allowed claims. [§ 1126(c).] In determining whether an impaired class has accepted a plan, insider votes are not counted. [§ 1129(a)(10).] In short, with regard to Class 1a, Debtor has fallen far short of the requirements of Section 1126(c).

*Second:* Class 1c has not accepted the Plan, because its sole creditor is a small post-petition administrative claimant, not entitled to vote.

*Third:* Classes 3a and 3b are improperly "gerrymandered" for the transparent purpose of creating a tiny impaired class (Class 3a, consisting of two voting creditors, with claims aggregating $14,206.11). As explained more fully in Part E, *infra*, those two creditors and the Conntechnical creditors (Class 3b) are treated exactly the same under the proposed Plan; thus, Conntechnical's vote to reject the Plan represents 98 percent of the amount of claims of general unsecured creditors. Further, these two voting creditors (Barry Young and Thomas Bahrick) are each attorneys for the Debtor, and are also Class 1a creditors by virtue of having received equity in exchange for legal services. Especially since Debtor apparently paid virtually all of its unsecured claims (except Conntechnical's) pre-petition, it is reasonable to conclude that either Messrs. Young and Bahrick were not actually owed the small amount of cash Debtor claims they are owed, or Debtor forbore from paying them the $14,206.11 pre-petition in order to artificially populate a tiny impaired class (Class 3a) that would enable debtor to argue that Section 1129(a)(10) was satisfied.

*Fourth:* Class 4 must be deemed not to have accepted the Plan, because the Plan states that the members of Class 4 will not receive or retain any property under the Plan. [§ 1126(g).]

Because no impaired class has accepted the Plan, Debtor has failed to meet the requirements of Section 1129(a)(10), and the Plan cannot be confirmed under Section 1129(b)(1). Accordingly, the Court need not even consider Debtor's failure, as explained below, to comply with numerous other subsections of Section 1129(a).

**B. The Plan Is Not Proposed in Good Faith [§ 1129(a)(3)].**

Even if the Court were to determine, on some basis, that the requirements of Section 1129(a)(10) had been satisfied, Debtor's failure to meet the requirements of numerous other

subsections of Section 1129(a) would preclude confirmation. One such requirement, found in Section 1129(a)(3), requires that in order to be confirmed, a plan must be proposed in good faith.

The evidence of Debtor's bad faith, both prior to and during this Chapter 11 case, is set forth at length in Conntechnical's motion to convert the case to Chapter 7, scheduled for hearing on the same date as the confirmation hearing. Conntechnical will not repeat here all of the arguments made in connection with the motion to convert, but will briefly recapitulate the facts showing bad faith:

- Debtor has made massive transfers − exceeding its historical gross sales − to manager Wayne K. Higashi ("Higashi"), insiders, and other Higashi companies.
- Debtor has no "hard copy" books, records, bank statements, cancelled checks or any other financial documents. It only has a computerized "QuickBooks" file, with no"backup" or any means for confirming the accuracy or completeness of anything contained therein.
- In fact, Higashi conscientiously altered thousands of entries in the QuickBooks file just before producing them in discovery, for the purpose of attempting to conceal improper expenditures and transfers.
- Debtor gave security interests to the so-called secured note creditors (Class 1a) within one year prior to the petition date. Every one of these creditors was already an equity holder in Debtor, and they are either insiders [as defined in Section 101(31)(B)] or friends of Higashi. The Plan proposes to pay them nothing, but to let them retain their equity positions; yet they have been erroneously classified as being senior to the general unsecured creditors. Further, because they were already equity holders at the time they supposedly made the loans that were to be secured by company assets, any such infusions of cash were actually contributions to capital, incapable of creating a security interest in addition to an equity interest.
- Debtor has unjustifiably paid debts of other Higashi companies, and attempted to conceal such payments.
- Debtor has withheld federal taxes from wages paid, but failed to remit the withheld funds to the Internal Revenue Service.

- Debtor has existed in Chapter 11 by borrowing money, but has neither sought nor obtained Court approval of any such borrowing.
- Debtor offered to sell Cali $60,000 worth of Facet-branded pulleys which Higashi represented Debtor had in its possession. However, Debtor does not report having any of this inventory, or its sale. It can only be assumed that Higashi has removed it, or sold it outside Debtor's business.
- Debtor has serious patent infringement problems, has no apparent inventory, and has suffered other setbacks that have caused Higashi to consider dissolution.
- Debtor bases its predictions of future profitability on a *September 2011* balance sheet and the wholly unsupported opinion of Higashi. However, Debtor's operating reports show only losses throughout the pendency of this case. Indeed, the report for July 2012, filed just three days ago, reveals a company that does not exist as a going business: It reports no sales or other income, no outlays (except a single $10 bank charge), no checks written, and no expenses. It wrote no checks in July. The company's liabilities are 2½ times its assets. And in prior months when it has reported sales, the cost of goods sold has exceeded the gross revenue from the sales. This is hardly an enterprise poised to emerge from Chapter 11 in two weeks and earn a profit for its creditors.
- Debtor's July Operating Report raises many other serious questions:
  - The Balance Sheet attached to the report shows receivables of $39,358.45, but under "Money Owed to You", Debtor reports receivables of only $32,000.
  - Those receivables which do exist arise from orders that Debtor cannot fill because of its lack of cash.
  - Debtor's credit card balance has increased since the June Operating Report, but the July statement shows no expenses that could be tied to credit card charges.
  - Despite its failure to remit withholding taxes to the IRS, Debtor claims to be current on all tax obligations.
  - Debtor reports having more than $16,000 on hand, but paid no bills in July, even its credit card liability of $314.66.

- Debtor's unrelenting losses and lack of business activity demonstrate that there is no conceivable basis for the projections of $50,000 a month in license revenue, plus other income, following confirmation. Debtor admits that the projections came off the top of Higashi's head; they are illusory.
- Debtor's Plan proposes to let the so-called note holders keep their equity interests (albeit diluted by issuance of additional shares to management), and to pay 8 cents on the dollar to unsecured creditors. Debtor's projections, and performance, show no ability even to pay that paltry sum; on the other hand, if Debtor's projections had any validity, there would be no excuse for not paying substantially more than that amount.

In short, confirmation of the Plan would simply maintain the status quo – a "shell" company looted by its management and owned by insiders and friends – except that its only real creditor (Conntechnical) would be shed for virtually nothing.

This is not a company that has a body of creditors, and wants to reorganize in order to pay them. It is the antithesis of such a company, and thus a classic example of bad faith. For that reason alone, Section 1129(a)(3) has not been satisfied, and confirmation must be denied.

C. **Unsecured Creditors Will Not Receive Property Equivalent to What They Would Receive in the Event of a Liquidation [§ 1129(a)(7)(A)].**

Section 1129(a)(7)(A) requires that *every* creditor in an impaired class that has not accepted the Plan receive or retain at least as much as if the Debtor were liquidated under Chapter 7.

As Conntechnical has explained, Debtor has failed to attribute any dollar value to its assets, which include its 45 percent interest in ES Design and substantial intellectual property. (As set forth in Conntechnical's Memorandum in support of its motion to convert, Debtor thought enough of ES Design to pay its expenses, and then cover up those payments by altering its books and records.) In addition, Debtor has given zero value to what appear to be strong cases for recovery of avoidable transfers made to insiders and other related entities. Debtor does not even come close to meeting the requirements of Section 1129(a)(7)(A).

/ / / / /

/ / / / /

**D. All Impaired Classes Have Not Accepted the Plan [§ 1129(a)(8)].**

As explained hereinabove, no impaired class has accepted the Plan. Section 1129(a)(8) requires that *each* such class have accepted the Plan.

**E. No Impaired Class Has Accepted the Plan; and an Artificial Accepting Class Cannot Be Created through Improper Segregation of Claims [§ 1129(a)(10)].**

Also as explained hereinabove, there is no impaired class that has accepted the Plan. Accordingly, the requirements of Section 1129(a)(10) have not been met.

Debtor attempts to create an accepting class, Class 3a, consisting of two of Debtor's attorneys, who are also equity holders, and whose putative claims total just $14,206.11; and to arbitrarily place Conntechnical (with a claim of at least $590,027.06), together with related entity Positork (which has not filed a proof of claim seeking any specific payment amount), in a separate Class 3b. The ostensible justification for this bifurcation is that the Class 3a creditors are trade creditors, and the Class 3b creditors are note or litigation creditors. Debtor has not objected to any claims, and assumes their validity for purposes of Plan balloting.

The obvious purpose of such separate classification is "gerrymandering an accepting impaired class in violation of § 1129(a)(10)." *In re Tucson Self-Storage, Inc.,* 166 B.R. 892, 897 (9th Cir. B.A.P. 1994). Debtor's assertion that it may object to one or more unsecured claims in the future cannot disguise the plain fact that, under the Plan, all allowed unsecured claims are treated identically. That unsecured claims arose from different kinds of transactions does not permit "gerrymandering" them into separate classes. Moreover, as explained hereinabove, the two lawyers who represent the only Class 3a votes received equity for services, and appear to be the only "trade creditors" not paid pre-petition; these two small claims were manufactured and segregated solely to create a minuscule impaired class whose two members would vote to accept a plan.

Where, as here, a debtor's proffered "reasons" for separately classifying claims "simply mask the intent to gerrymander the voting process", such a classification scheme must be disapproved. *Matter of Greystone III Joint Venture,* 995 F.2d 1274, 1279-81 (5th Cir. 1991); *In re Tucson Self-Storage, Inc.*, *supra,* 166 B.R. at 897.

/ / / / /

## F. It Is Likely that Confirmation Would Be Followed by Liquidation and/or Further Reorganization [§ 1129(a)(11)].

As explained more fully in Conntechnical's motion to convert this case to one under Chapter 7, Debtor has no prospects for profitability. It has experienced nothing but losses from the very beginning, when Higashi drained it of most of its initial operating capital; it has paid out more in insider management fees than its total historical gross sales; it has lost more than $1,733,000 in just four years of business; and despite the automatic stay and other protections under Chapter 11, it has lost money every month since the petition was filed.

Unless this company is, in gross bad faith, *designed and intended* to lose money, it is likely that confirmation would be followed by liquidation or the need for further financial reorganization. Accordingly, the requirements of Section 1129(a)(11) are not met, and the Plan cannot be confirmed.

## G. Even If the Requirements of Section 1129(a) Somehow Were Deemed To Have Been Met, the Plan Could Not Be Confirmed Under Section 1129(b).

Because the Plan does not meet the requirements for confirmation under Sections 1126(c) and (g), or Sections 1129(a)(3), (7), (10) or (11), the Court cannot confirm it under Section 1129(b).

If all the provisions of Section 1129(a) except 1129(a)(8) had been satisfied, the Court could confirm the Plan if it did not discriminate unfairly, and were fair and equitable, as to *each class of impaired claims* that did not accept the Plan. But even if Section 1129(b) were applicable, Debtor still has not satisfied the requirements of that subsection.

### 1. *The Plan Discriminates Unfairly [§ 1129(b)(1)].*

Debtor improperly classifies equity holders as so-called secured note creditors under Class 1a, so that they can "leapfrog" the unsecured creditors by retaining their equity interests while the unsecured creditors receive little or nothing under the Plan. Moreover, because the Class 1a creditors include Higashi, his family trust, ITLMC, and other insiders who have received huge transfers of money from Debtor, the Plan effectively exonerates the insiders from any responsibility for return of avoidable transfers.

In addition, when Debtor induced Conntechnical to make an unsecured loan of more than $350,000, Debtor promised in writing that any future note beneficiary would be given "similar"

terms. [Declaration of Connard P. Cali, filed herewith, at ¶ 3 and Exhibit 1.] However, Debtor proceeded thereafter to purportedly give the Class 1a note holders a blanket security interest all in the company's assets, attempting to relegate Conntechnical to unsecured status.

In sum, the Plan is an exercise in unfair discrimination, letting insiders keep their equity interests and all the money they have taken from the Debtor, purporting to relegate Conntechnical (Debtor's only actual significant creditor) to junior status, and thereupon relieving itself of its indebtedness to Conntechnical.

### *2. The Plan Is Not Fair and Reasonable [§ 1129(b)(1)].*

The proposed Plan is manifestly unfair and unreasonable, for the reasons already set forth above. Management has looted the company, taking or transferring massive amounts of money to themselves or related entities while doctoring the books to conceal the transfers. There are no prospects for viability. Debtor granted purported security interests that either do not reflect actual transactions or represent capital infusions by equity holders rather than loans – all for the purpose of unfairly avoiding payment to Conntechnical.

Furthermore, in order to be "fair and reasonable", a plan must provide *either* that each unsecured claimant receive or retain property equal to the amount of his claim [§ 1129(b)(2)(B)(i)] *or* that no claimant junior to such claimant receive any property [§ 1129(b)(2)(B)(ii)]. Here, Conntechnical obviously is not receiving property equal to the amount of its claim; and the Class 4 equity holders who supposedly are surrendering their interests are in fact, for the most part, the same persons and entities that comprise Class 1a *and are retaining their interests*. Thus, the Plan flagrantly violates Section 1129(b)(2)(B).

/ / / / /

/ / / / /

/ / / / /

/ / / / /

/ / / / /

/ / / / /

/ / / / /

## IV. CONCLUSION

It is difficult to imagine a plan that more transparently, and contemptuously, conceals a debtor's true intentions, or that so plainly fails to meet the requirements for confirmation under Sections 1126 and 1129. For all the reasons set forth herein, Conntechnical respectfully submits that confirmation of the Plan must be denied.

DATED: August 23, 2012

Respectfully submitted,

Peter C. Bronson
LAW OFFICES OF PETER C. BRONSON
A Professional Corporation

By: *[signature: Peter C. Bronson]*
    Peter C. Bronson
Attorneys for Creditor
Conntechnical Industries, Inc.