Peter C. Bronson, Cal. Bar No. 60669
LAW OFFICES OF PETER C. BRONSON
A Professional Corporation
770 L Street, Suite 950
Sacramento, California 95814
Telephone: (916) 444-1110
Facsimile: (916) 361-6046

Attorneys For Creditor Conntechnical Industries, Inc.

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>**CT DRIVES, LLC,**<br><br>        Debtor. | Case No. 11-60198 SLJ 11<br><br>Chapter 11<br><br>**CREDITOR CONNTECHNICAL INDUSTRIES, INC.'S MEMORANDUM IN RESPONSE TO DEBTOR'S CONFIRMATION BRIEF**<br><br>Date:    October 9, 2012<br>Time:   1:30 p.m.<br>Place:   United States Bankruptcy Court<br>           280 S. First St., Room 3099<br>           San Jose, California 95113<br>Judge:  Hon. Stephen L. Johnson |

Creditor Conntechnical Industries, Inc. ("Conntechnical") respectfully submits this Memorandum in response to Debtor's Confirmation Brief ("Debtor's Brief") filed September 20, 2012.

## I.    INTRODUCTION

Debtor's Brief fails to respond to (and in large part misconstrues) the arguments against plan confirmation contained in Conntechnical's Objection to Confirmation of Debtor's Proposed Third Amended Plan of Reorganization ("Conntechnical Objection").

It is clear that the only purported impaired class to have accepted the proposed Third Amended Plan (the "Plan") is Class 3a, comprised of two attorneys. Not only is there no cognizable

reason for segregating the two attorneys from the other unsecured creditors; but also, debtor CT Drives, LLC's ("Debtor") accounting records show that at the petition date, Debtor held a substantial *credit balance* for services *yet to be rendered* by the two attorneys.

Further, Debtor offers no response, much less a satisfactory one, to the observation that the Plan is not feasible. Since Conntechnical's Objection was filed, Debtor has filed yet another Monthly Operating Report, for August 2012, once again showing zero business. Debtor continues to rely on a single September 2011 balance sheet to show that there is a chance of future profitability; and even this year-old document lacks any profit and loss statement or other data that could or would contravene the overwhelming evidence that Debtor has no real business operations, has suffered nothing but losses in Chapter 11 and, in fact, has transferred huge amounts of cash to principal Wayne Higashi ("Higashi") and other insiders.

Finally, it remains indisputable that every single creditor comprising Class 1a is also an equity holder in Debtor; and while "equity holders" as a class (Class 4) are to surrender their equity under the Plan, the Class 1a "creditors" all would retain their equity positions. Debtor cannot avoid the obvious conclusion: The Plan is a thinly disguised scheme to allow equity holders to "leapfrog" over unsecured creditors and retain their equity, while the unsecured creditors are paid virtually nothing.

The case against confirmation is overwhelming. Confirmation should be denied, and the case should be converted to one under Chapter 7.

## II. THE PLAN HAS NOT BEEN ACCEPTED BY CREDITORS

Debtor concedes that Classes 1c and 4 had no standing to vote, but asserts that Classes 1a and 3a have accepted the Plan. But Class 1a has not accepted the Plan, and there is no basis for gerrymandering the unsecured creditors into two classes (3a and 3b).

**A. Class 1a.**

Debtor asserts, first, that Class 1a should be deemed to have accepted the Plan because the total dollar amount of claims for voting purposes consists of the total amount voted, not the total amount scheduled. While the total amount of claims remains less than clear, performing the calculation exactly as Debtor proposes *makes no difference*. The total dollar amount of Class 1a

claims which were voted for acceptance or rejection of the Plan is, according to debtor, $134,135.

The insurmountable problem for Debtor is that of that $134,135, a total of $76,785.50 – *i.e., 57 percent* – consisted of the votes of insiders, as follows:

| Voting creditor | Basis for insider status | Claim amount (Sched. D) |
|---|---|---|
| Wayne Higashi | 11 U.S.C. § 101(31)(B) | $10,150.00 |
| Steven Higashi | 11 U.S.C. § 101(31)(B)(vi) | $3,686.50 |
| Douglas & Timoko Higashi | 11 U.S.C. § 101(31)B)(vi) | $10,150.00 |
| Higashi Family Trust | 11 U.S.C. § 101(31)(b)(vi) | $15,300.00 |
| ITLMC (Higashi-owned) | 11 U.S.C § 101(31)(E) | $27,349.06 |
| Robert Marangell | 11 U.S.C. § 101(31)(B)(iii)[1] | $10,150.00 |

Debtor expressly acknowledges that some of these creditors are insiders, and that "[o]ne may argue" that the others are also insiders (namely, Higashi's relatives and former member of management Robert Marangell).[2] The insider votes must be disregarded. [§ 1129(a)(10).] Thus, Class 1a has not accepted the Plan.

Debtor offers a "straw man" argument, stating that "Conntechnical also contends that all of Debtor's Class 1a secured creditors are 'insiders' for purposes of 11 U.S.C. 1126 because they are also members of the Debtor." [Debtor's Brief at 2.] However, Conntechnical makes no such contention. All of the Class 1a creditors are *equity holders whose names appear on Debtor's list of equity holders filed in this case*, a fact relevant to whether the Plan violates the absolute priority rule. Conntechnical's argument, unrefuted by Debtor, is that if the votes of persons who clearly are insiders as defined under Section 101(31) are disregarded as required by Section 1129(a)(10), then Debtor has failed to obtain positive votes from Class 1a creditors holding at least two-thirds of the dollar amount of the claims held by the class. [§ 1126(c).] Class 1a, therefore, has not accepted the Plan.

---

[1] References hereinafter to code sections are to the United States Bankruptcy Code, Title 11 of the United States Code.

[2] Even if Mr. Marangell's vote were deemed to be a non-insider vote, still only 50 percent of the dollar amount of Class 1a claims would have been cast by non-insiders.

B. **Class 3a.**

The Court requested further briefing on whether unsecured creditors impermissibly have been "gerrymandered" into two classes, 3a and 3b, for the purpose of artificially creating an impaired class (3a) that would vote for the Plan. Conntechnical will address that question, but it should first be noted that according to Debtor's accounting records, the two attorney "creditors" constituting Class 3a were not prepetition creditors at all.

The QuickBooks records produced by Debtor show that as of November 4, 2011 – three days after the Petition Date – each of the two attorneys, Barry N. Young ("Young") and Thomas L. Bahrick ("Bahrick"), *owed legal services to Debtor for which Debtor had prepaid.* According to Debtor's "Prepaid Services" journal, as of November 4, 2011, there was a positive balance of $24,438.50 in prepaid services owed to the Debtor by Young, and $54,384.00 in prepaid services owed by Bahrick. Thus, it appears that neither Young nor Bahrick was a creditor at all, as of the Petition Date. [Declaration of Peter C. Bronson ("Bronson Decl."), filed concurrently herewith, at ¶ 3, and Exh. 1.]

But it is worse than that for Debtor. It appears that Debtor created, *postpetition,* book entries evidencing alleged indebtedness to the lawyers. In fact, Debtor recorded entries on *November 4, 2011, i.e.*, postpetition, in an attempt to transform the attorneys' obligation to perform services into accounts payable allegedly owed to them. [Supplemental Declaration of Connard P. Cali filed August 30, 2012 in support of Conntechnical's motion to convert this case to Chapter 7 ("Supp. Cali Decl."), at ¶ 3, and Exhs. 1-2.] Significantly, neither Bahrick nor Young even filed a proof of claim in this case, so if there were any legitimate "invoices", they are not available to the Court. There can only be one reason for all of this: The "obligations" were created post-petition, in order to construct a tiny class to consent to confirmation.

Even without considering this unsavory scheme, there is still no basis for dividing unsecured creditors into two classes in this case.

The Court invited Debtor and Conntechnical to brief the effect of Ninth Circuit case law, and in particular *In re Loop 76, LLC,* 465 B.R. 525 (9th Cir. B.A.P. 2012), on the issue. Debtor's Confirmation Brief only mentions *Loop 76* with a "see also" reference in a footnote—presumably

because the facts justifying separate classification of claims in that case are quite dissimilar from those in the present case.

In *Loop 76,* the Court pointed out that while Section 1122(a) mandates that dissimilar claims may not be placed in the same class, the question of whether claims are substantially similar is a question of fact, which the Bankruptcy Judge must evaluate on a case-by-case basis, based on "the kind, species, or character of each category of claims." *In re Loop76, LLC, supra,* 465 B.R. at 536, *quoting In re Johnston,* 21 F.3d 323, 327 (9th Cir. 1994). If the Court determines that claims are substantially similar, a plan may only place them in separate classes "if the debtor can show a business or economic justification for doing so." 465 B.R. at 536.

In the *Loop 76* case, the Court found that one unsecured creditor had a "substantially dissimilar" claim to others, because that creditor could look to a third party guarantor for payment of its debt. Accordingly, the Court did not need to address the question of whether there was a business or economic justification for separately classifying claims, or whether claims were separately classified in order to gerrymander an affirmative vote. 465 B.R. at 541.

Similarly, in *In re Johnston, supra,* the Court cited pending litigation, that could result in the litigant-creditor recovering money from third party defendant and thereby getting more money than other creditors, as a basis for separate classification. Unlike *Loop 76* and *Johnston*, neither Bahrick, Young nor Conntechnical have a guarantor or other collateral source to whom they can look for repayment of any obligation owed.

A recent bankruptcy case clarified *Johnston*. In *In re 4th Street East Investors, Inc.*, 2012 WL 1745500 (Bankr. C.D. Cal. May 12, 2012), the Court stated that unless pending litigation would open up a *third party* source for payment, it did not constitute a ground for separate classification. In *4th Street East*, there were two prospective classes of unsecured creditors: a small group owed about $9,000 or less, and a large creditor, Coastline RE Holdings Corp ("Coastline"), that was owed substantial sums on a promissory note. No unsecured creditors would receive more than "a dividend that would be vanishingly small in comparison to that alleged debt." Thus the facts in *4th Street East* were strikingly similar to those in the present case, where two attorneys are *allegedly* owed a very small amount of money, Conntechnical is owed about $600,000 by virtue of a promissory note, and

the Plan calls for *all* unsecured creditors to be treated identically and receive a "vanishingly small" dividend.

The *4th Street East* Court stated:

> "This case is essentially a contest between Coastline and Debtor's insiders acting to protect their interests as equity holders, not primarily their interests as creditors. As Coastline points out, Debtor's equity holders cannot retain their interests in Debtor under the absolute priority rule . . ." [Slip Opn. at 9.] Under the circumstances, the Court not only found no basis for separate classification, but granted Coastline relief from stay because a "cramdown" was not possible. *Id.* at 10.

In the face of these authorities and principles, Debtor attempts to argue that Conntechnical and the attorneys have substantially dissimilar claims, even though the Plan proposes to treat them exactly the same (by offering each of them a paltry 8 percent dividend). None of Debtor's arguments is persuasive.

First, Debtor appears to seriously contend that Conntechnical is an "insider", whose vote should not be counted in Class 3b, because it holds or held a 7 percent equity interest in Debtor. An equity holder is not an insider simply by virtue of being an equity holder; moreover, Conntechnical is owed money pursuant to a promissory note, *and* would not receive or retain any equity under the proposed Plan.

Second, Debtor states that the Class 3a creditors are trade creditors who are likely to provide future services, whereas Conntechnical is a competitor with a disputed claim based on a note. Debtor has not objected to Conntechnical's proof of claim ; and Conntechnical is not a competitor. [Supp. Cali Decl., ¶ 6.] Moreover, even if Conntechnical were a competitor, that would not change the character of its claim, which is based as it is on a promissory note. In addition, to the extent that any future claim objection were overruled, the Plan would treat Conntechnical precisely the same as the attorneys. Thus, the differences pointed out by Debtor as justifications for separate classification are no more meaningful for purposes of Section 1122(a) than differences in the names of the claimants.

Finally, Debtor contends that Conntechnical, in the past, had a right to convert its unsecured

note to equity. But Conntechnical did not do so; it is an unsecured creditor, just like the Class 3a creditors.

In short, all of the Class 3a and Class 3b creditors are unsecured creditors, whose claims are not disputed and who will receive exactly the same treatment under the Plan. Coupled with the fact that the two attorney claims do not even appear to be legitimate, the improper and impermissible purpose of the attempted gerrymandering is clear.

### III. DEBTOR OFFERS NO REAL LIQUIDATION ANALYSIS

In its Objection to confirmation, Conntechnical explained that Debtor had failed to attribute any dollar value to its assets, which include its 45 percent interest in ES Design and substantial intellectual property. In addition, Debtor has given zero value to what appear to be strong cases for recovery of gigantic avoidable transfers made to insiders and other related entities.

Debtor, in its Confirmation Brief, ignores the issue of avoidable transfers.

Debtor seeks to excuse the lack of any valuation of the ES Design assets on the ground that these assets were acquired in exchange for forgiveness of debt. The consideration paid for the assets is absolutely irrelevant; it is the value of the assets that must be, but has not been, taken into account in connection with any meaningful liquidation analysis. And as Conntechnical has previously pointed out, Debtor has substantial additional intellectual property and other assets that are not afforded any value under the Plan.

Debtor does not even come close to meeting the requirements of Section 1129(a)(7)(A).

### IV. THE PLAN IS NOT PROPOSED IN GOOD FAITH, AND IS NOT FAIR AND REASONABLE

Conntechnical has cited the multiple reasons why the Plan has not been proposed in good faith. Among other things: Debtor has made massive insider transfers. Debtor has no "hard copy" financial records, but only a computerized "QuickBooks" file that can readily be – and has liberally been – altered. Debtor gave equity interests to the Class 1a creditors within a year prior to the Petition Date; all of these creditors were already equity holders, and all would keep their equity under the Plan. Debtor has failed to remit withholding taxes. Debtor has unjustifiably paid debts of related entities, and concealed those payments. Debtor has existed (albeit barely) in Chapter 11 only

by borrowing money without Court approval.

Debtor scarcely even attempts to refute any of these allegations. Debtor effectively admits that, at its core, this case is like *In re 4th Street Investors, Inc.:* a scheme to protect the equity holders (most of them insiders) under Class 1a at the expense of the unsecured creditors. It is difficult to imagine a clearer case of bad faith.

Furthermore, in order to be "fair and reasonable", a plan must provide *either* that each unsecured claimant receive or retain property equal to the amount of his claim [§ 1129(b)(2)(B)(i)] *or* that no claimant junior to such claimant receive any property [§ 1129(b)(2)(B)(ii)]. Here, Conntechnical obviously is not receiving property equal to the amount of its claim; and the Class 1a creditors *are retaining their equity interests.* Thus, the Plan flagrantly violates Section 1129(b)(2)(B).

In addition, Debtor has no answer to Conntechnical's observation that Debtor really has no business, shows no ability to reorganize, and has experienced nothing but losses in Chapter 11. Debtor now has filed its Monthly Operating Report for August 2012. Like its predecessors, it shows zero sales and, in essence, zero business activity. (Debtor *did* receive an $847 tax refund, but there was little or no other activity.) Meanwhile, the only supposed evidence of plan feasibility is a September *2011* balance sheet – which not only is a full year old but, also, does not even include a profit and loss statement. Debtor's records show that even if it realized any of its projected sales, the cost of goods sold for each unit would exceed the revenue from the sale of such unit. And, perhaps most significantly of all, Debtor has transferred to insiders more money than its total historical gross sales.

Finally, if somehow Debtor's rosy projections of large profits had any basis in fact, then there would be no excuse for offering unsecured creditors only pennies on the dollar, as proposed in the Plan.

In short, this is neither an honest debtor in need of a "fresh start" nor a real business that seeks to reorganize in order to pay its creditors. None of the standards for plan confirmation have been met.

/ / / / /

## IV. CONCLUSION

For all the reasons stated herein, and in Conntechnical's Objection to Confirmation, Conntechnical respectfully submits that confirmation should be denied, and that this case should be converted to one under Chapter 7 of the Bankruptcy Code.

DATED: October 4, 2012

Respectfully submitted,

Peter C. Bronson
LAW OFFICES OF PETER C. BRONSON
A Professional Corporation

By: */s/ Peter C. Bronson*
Peter C. Bronson
Attorneys for Creditor
Conntechnical Industries, Inc.